Argued November 3, affirmed as modified and remanded
December 21, 1972

# WASHINGTON, *Appellant, v.* HEID, *Respondent.*

504 P2d 745

*Donald H. Joyce,* Portland, argued the cause and filed a brief for appellant.

*R. William Riggs,* Portland, argued the cause for respondent. With him on the brief were Willner, Bennett & Leonard, Martin J. Howard, and Groce & Howard, Portland.

HOLMAN, J.

This is an action for damages for the alleged wrongful garnishment of $73.34 of plaintiff's wages. Defendant counterclaimed for the balance claimed to be due from plaintiff to defendant on a promissory note. The trial court entered a judgment of involuntary nonsuit to plaintiff's cause of action upon the ground there was insufficient proof of malice, of damages, and of lack of probable cause. On a motion for a directed verdict, the trial court ruled that defend-

ant's note had been paid in full. Plaintiff appealed, complaining of the nonsuit.

No question has been raised on appeal concerning the propriety of filing an action on a note as a counterclaim to an action for wrongful attachment.

Plaintiff owed defendant approximately $1,600 on a judgment and a balance of $600 on a note. Plaintiff was cited as a judgment debtor into court by defendant for an examination of plaintiff's assets. When plaintiff appeared, the parties, at the suggestion of the court, attempted to settle their differences. Plaintiff was not represented by an attorney; defendant was. Following the conference between the parties, defendant's attorney drew the following document which was signed by both defendant's attorney and plaintiff:

### "SETTLEMENT AGREEMENT

"I, HENRY H. WASHINGTON, hereby agree to pay to C. E. HEID the total sum of One thousand two hundred ($1,200) dollars in full settlement of his claims against me. Said $1200. shall be payable as follows:

"The sum of Three hundred ($300) dollars on or before January 16, 1967; the sum of three hundred ($300) dollars on or before February 15, 1967; the sum of two hundred ($200) on or before March 15, 1967; the sum of one hundred ($100) dollars on or before April 15, 1967; the sum of one hundred ($100) dollars on or before May 15, 1967; the sum of one hundred ($100) dollars on or before June 15, 1967; and the sum of one hundred ($100) dollars on or before July 15, 1967.

"Any payment that becomes delinquent shall bear interest at the rate of 6 percent per anum [sic]. In the event that the total sum is paid in full as each installment falls due there shall be no interest accrue under this agreement."

Plaintiff thereafter became delinquent in his payments under the agreement and defendant caused an execution to issue in the case in which he held the judgment and had plaintiff's wages attached. This is the action of which plaintiff complains.

The parties agree that both the note and the judgment were intended to be included within the claims which were the subject of the above contract. However, they do not agree on the legal import of a matter about which the document is silent. Plaintiff claims the agreement was a substituted contract and that, once it was signed, the judgment and the note were satisfied and no attachment could thereafter be levied upon the judgment. Defendant claims it was an executory accord and that if its provisions were not carried out in accordance with its terms, he could enforce the original indebtednesses to their full extent. This is the only issue presented on appeal from the nonsuit. Plaintiff expresses his position as follows:

> "The plaintiff's theory in the case at bar is that a novation [substituted contract] was substituted for the preexisting judgment, promissory note and N.S.F. check. The foregoing is either true or it is not. If it is not true the writer must admit that the plaintiff's case must fail * * *."

The agreement is ambiguous in that it says nothing about the parties' intentions in the event plaintiff breached it. The interest provision in the agreement serves as an indication that a substituted contract was intended. On the other hand, it seems unlikely that defendant would give up a judgment for $1,600 and the $600 balance due on a note in return for an agreement to pay him $300 at once and $900 in the future. However, an immediate $300 down payment might induce the making of such an agreement. At the time the

agreement was made the note was not returned to plaintiff nor was a receipt for its payment delivered to him. Neither was a satisfaction of the judgment given.

Plaintiff did not testify concerning the understanding of the parties regarding their respective rights in case he became delinquent. He called as a witness the lawyer who represented defendant when the agreement was made who testified that the parties discussed the matter, that it was their intention the original indebtednesses could be asserted by defendant in case plaintiff became delinquent, and that plaintiff was told this was the import of the agreement.

The question is posed whether there was sufficient evidence of a substituted contract to entitle plaintiff to go to a jury, assuming that it is a jury and not a court question. The burden is upon the plaintiff to prove it was the intention of the parties that the prior indebtednesses be immediately discharged upon the signing of the agreement. In *Palmer v. Yager,* 20 Wis 97 [\*91] (1865), the court said that "[a]n intention to satisfy [pre-existing indebtedness] is not to be implied from the mere making of the promise. It must be established by some additional proof, the burden of which rests upon the debtor." 20 Wis at 107 [\*100].

Plaintiff has not carried his burden, since all he has offered is an equivocal contract and a witness who testified that such contract was an executory accord. Even if we assume that the lawyer who represented defendant at the time of the agreement was an adverse witness under ORS 45.590 and thus plaintiff was not bound by his testimony, we do not believe the ambiguous contract, without further evidence, was sufficient

to make a jury question. 6 Corbin on Contracts 199-200, § 1293 (1962 ed) states as follows:

> "Whether the new agreement or 'accord' is itself accepted as an immediate discharge of the prior claim—as a substituted contract—or is not so accepted, is merely a question of reasonable interpretation of the expressions of the parties. If the party committing a breach of the new agreement is the debtor under the former one, and the interpretation is doubtful, the court is likely to resolve the doubt in favor of the creditor and to sustain his action on the first contract * * *." (Footnote omitted.)

3. The nature of the previous obligation is relevant to the manner in which a doubtful situation is looked upon. Before a prior judgment debt will be found to be discharged, "such intent must be clearly manifested," *Hartzog's Estate,* 270 Pa 172, 113 A 193 (1921). On the other hand, where the original obligation is unliquidated and the subsequent agreement is for a definite sum, courts will usually hold the subsequent agreement to be a substituted contract. *Mays v. Stegeman,* 213 Ky 60, 280 SW 464 (1926). Such distinctions make sense because it is unreasonable to assume that, without further evidence, a creditor who has an immediate right to an undisputed sum such as a judgment will substitute a debtor's promise to pay a lesser sum therefor without the right to assert the original debt if the subsequent agreement is not carried out according to its terms.[1] On the other hand, where there is a disputed or unliquidated claim it is reasonable to assume in the absence of further testimony that a subsequent agreement for a specific

---

[1] No claim has been made that the accord was void for want of consideration.

amount was probably intended as a substituted contract.

■ There being insufficient proof of a substituted contract, the defendant was at liberty to assert the original debt at any time plaintiff was delinquent under the agreement. *Corbin* expresses the rule as follows:

"* * * If it is not agreed upon as a substituted contract, and in many cases it is not, it should be held to operate only as a temporary suspension as in the case of other accords. In such cases it is the 'performance' of the compromise that is to operate as final satisfaction. If the debtor breaks the compromise agreement, the suspension is lifted and the creditor can again enforce his former claim." 6 Corbin on Contracts 75, § 1268 (1962 ed).

■ Plaintiff also claims error was committed by the trial court when it kept out of evidence testimony which plaintiff claims would show malice. The issue is now irrelevant because of our determination that there was insufficient evidence of a substituted contract and therefore no evidence of lack of probable cause for the garnishment.

■ Plaintiff also objects to the form of the trial court's judgment for defendant. The trial court held that the note was fully paid and that the prior judgment was valid and outstanding in its full amount. The validity of the judgment and the amount due thereon were issues not directly in question. In any event, plaintiff testified that he paid $400 on the note, and this testimony was uncontradicted. He subsequently paid $1,243 additionally. This would more than pay the note and leave something to apply upon the judgment. That part of the judgment which refers to the former judgment should be deleted.

The judgment of the trial court is affirmed as modified and the case is remanded for the entry of a judgment in conformance with this opinion.